**GENERAL AMERICAN LIFE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Lee CASTONGUAY; Jerry Fitzpatrick; Charles Kilmer, et al., Defendants–Appellants.**

**No. 93–16560.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 13, 1995.

Decided May 9, 1995.

James A. Carter, Carter & Carter, San Francisco, CA, for defendants-appellants.

William Hill and Michael David Alexander, Donahue, Gallagher, Thomas & Woods, Oakland, CA, for plaintiff-appellee.

Before: FLETCHER, REINHARDT and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

This case, a sequel to *General American Life Ins. Co. v. Castonguay*, 984 F.2d 1518 (9th Cir.1993), is an action by a creditor of an ERISA trust against the Trustees in their representative capacity. The creditor seeks to enforce a judgment against a portion of the assets of the trust which the Trustees contend were marked by practice as "in re-

serve," to be returned on termination to the employer contributors to the trust. Holding that these assets are part of the trust, we affirm the district court's grant of summary judgment to the creditor.

## FACTS

■ General American Life Insurance Company (General) managed health insurance by contract with the Trustees of the Northern California Motor Car Dealers Association Trust Fund (the Trustees). The trust, as we have already determined, was an ERISA trust. *General American Life*, 984 F.2d at 1519. Federal law, accordingly, governs the relationship "between plan and trustee," *id.* at 1521, and so must govern the determination of what constitutes the res of the trust.

The trust was created by 239 separate employers, auto dealers in Northern California. Each signed a subscription agreement which provided as follows:

It is understood that under the provisions thereof Subscribers shall contribute to the Northern California Motor Car Dealers Association Insurance Trust Fund such amounts as may be required for the purpose of providing and maintaining group insurance as specified in said Agreement and Declaration of Trust and that Subscribers shall furnish any information required in connection with the administration of such insurance trust.

It is also understood that should the undersigned fail to qualify as a Subscriber as defined in said Agreement and Declaration of Trust, any monies paid by or on account of the undersigned for the purpose of providing and maintaining group insurance as specified in said Agreement and Declaration of Trust shall be returned and there shall be no further rights or obligations whatsoever in connection therewith.

The trust to which the dealers subscribed provided:

no part of its corpus or income shall ever revert or inure to the benefit of any contributing employer except for the return of erroneous contributions as provided hereafter; but this shall not prevent the Board of Trustees from adjusting Employer con-

tributions to take account of Plan experience. (Trust Agreement, I.B.).

The trust further provided:

No person shall have any right, title or interest in or to Trust assets except as otherwise required by law or otherwise specifically provided hereunder. (Trust Agreement X.B.).

The Trustees maintained reserves for a variety of purposes, one of which was called "Subscriber Reserves" and consisted of an amount equal to the first monthly premium. It was the practice of the trust to inform new subscribers that if an employer terminated its participation in the trust, having paid all monthly premiums as required, then the amount of the employer's subscriber reserve would be refunded to the terminating employer.

Both the contract with General for insurance and the trust terminated. The trust was indebted to General; General sought to recover what it was owed.

## PROCEEDINGS

In the previous litigation we held that the Trustees were not responsible in their individual capacities to General. Following this decision, General moved for summary judgment against the trust for the balance owing in the sum of $3,776,882, plus interest. The Trustees responded by contending that the so-called subscriber reserve funds were not subject to enforcement of General's claim. The district court entered summary judgment in favor of General. The Trustees appeal.

## ANALYSIS

■ The Trustees pitch their entire case on the practice by which they obtained the subscriber reserve from the dealers on the representation that, if fully paid-up, the terminating dealer would get refunded the amount it contributed to the reserve. The argument has some appeal but runs squarely up against the explicit provisions of the trust by terms of which neither corpus nor income can revert to a subscriber, and no trust asset may be used for the benefit of a subscriber.

These provisions of the trust, which are conclusive, merely restate the requirements of federal law governing ERISA trusts. 29 U.S.C. § 1103(c)(1).

The subscription agreements do not add anything to the Trustees' argument. These agreements make no reference to returning the subscriber reserve. Indeed, the agreements commit the subscribers to providing such amounts as may be required to maintain the group insurance involved. The Trustees speak of the subscriber reserve as being "earmarked" for return to the paid-up subscribers. Once the subscriber paid its money into the trust the Trustees found no effective legal way of distinguishing the reserve payment from the general trust assets. The Trustees' oral representation to the subscribers cannot alter the written ERISA plan. 29 U.S.C. § 1104(a)(1)(D).

AFFIRMED.